# EXHIBIT A

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
ALEKSANDR J. YARMOLINETS (276707)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
ayarmolinets@bholaw.com

ROBBINS LLP
KEVIN A. SEELY (199982)
STEVEN M. MCKANY (271405)
DARNELL R. DONAHUE (281926)
5040 Shoreham Place
San Diego, CA 92122
Tel: 619/525-3990
619/525-3991 (fax)
kseely@robbinsllp.com
smckany@robbinsllp.com
ddonahue@robbinsllp.com

Attorneys for Plaintiff and the Class

**FILED**
San Francisco County Superior Court

JUN 23 2020

CLERK OF THE COURT
BY: _____
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| ROBERT WRIGHT, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES SCHWAB & CO., INC.,<br><br>Defendant. | Case No: **CGC-20-585092**<br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT FOR:<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE §§ 17200 *et seq.*;<br>2. NEGLIGENCE; and<br>3. UNJUST ENRICHMENT<br><br>(*UNLIMITED MATTER*-Amount demanded exceeds $25,000)<br><br>DEMAND FOR JURY TRIAL |

BY FAX

Case No.

CLASS ACTION COMPLAINT

00164492

Plaintiff Robert Wright brings this action on behalf of himself and all others similarly situated against defendant Charles Schwab & Co., Inc. ("Schwab") and states:

### NATURE OF THE ACTION

1. Schwab is a retail brokerage firm. Its customers make their own investment trades through Schwab's automated online brokerage system. This class action arises from a malfunction of Schwab's online system that processes certain types of trades in the opposite way instructed by the customer. Because of the malfunction, when customers act to close their "short" trading positions, the malfunction causes the online system to instead purchase "long" positions while keeping the short positions open and active. As a result of Schwab's malfunctioning system, Plaintiff and Class members acquired investments they did not order and were forced to hold investments they instructed Schwab to sell.

2. Plaintiff brings this action on behalf of himself and others similarly situated to obtain injunctive relief in accordance with the McGill Rule (*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)) and to recover their monetary losses and allege claims for negligence, violations of California's unfair competition law, and for unjust enrichment.

### JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to Article VI, Section 10 of the California Constitution, because this case is not a cause given by statute to other trial courts.

4. This Court has personal jurisdiction over Defendant because Defendant is authorized to and does conduct business in California. Defendant's headquarters and primary place of business is in California, rendering exercise of jurisdiction by California courts permissible.

5. Venue is proper in this Court because Defendant is headquartered in this County, Defendant transacts substantial business in this County, and a substantial part of the events giving rise to the claim occurred in this County.

### PARTIES

6. Plaintiff Robert Wright is a citizen of the State of California and a resident of Los Angeles County. Plaintiff is a retail customer of defendant Schwab. As described more

fully below, on April 20, 2020, Plaintiff submitted trade instructions using Schwab's online trading system to close short positions he owned on Royal Caribbean stock. He did so by clicking "close." However, Schwab's system did not execute the trade as Plaintiff instructed. Instead of closing Plaintiff's short position on 6,300 shares of Royal Caribbean stock which is accomplished by purchasing 6,300 shares of the stock, Schwab's system purchased for Mr. Wright 6,300 long position shares of Royal Caribbean stock, but did not close his short position. This erroneous transaction is because of a malfunction in Schwab's online trading system that does not buy shares and close short positions as the customer instructs; instead, the system improperly buys additional long position shares and keeps open short positions. This happened several times, and Schwab's trading system defect eventually left Plaintiff owning 31,500 shares of a stock (valued at over $1.1 million) he tried to get out of in the first place. Two days later, on April 22, 2020, Plaintiff again attempted to close short positions on stock he owned. As before, Schwab's trading system did not execute the trade as Plaintiff instructed by closing the short position, but kept open the short position and purchased Plaintiff long positions of the same stock he was attempting to sell. As a result, Plaintiff suffered injury in fact and lost money. Plaintiff continues to maintain and place investment orders through his Schwab brokerage account and desires to keep doing so, provided the malfunction is corrected. Nevertheless, unless and until Schwab corrects the malfunction, Plaintiff will be subjected to Schwab's ongoing conduct complained of in this Complaint.

7. Defendant Schwab is a California corporation with its principal place of business in San Francisco, California. Schwab is a registered broker-dealer with the U.S. Security and Exchange Commission in all fifty states and is a member of the Financial Industry Regulatory Authority, Inc. (FINRA). It offers investment products and services, including online brokerage accounts, to retail customers throughout the United States, including tens of thousands of customers throughout California. Schwab's customers maintain more than 12.3 million active brokerage accounts with over $4 trillion in client assets.

## FACTUAL ALLEGATIONS

*Schwab's Online Brokerage Accounts*

8. Many of Schwab's customers utilize Schwab's online brokerage account system. After setting up an account at Schwab.com and depositing funds into it, the customer can place investment orders online. Once an order is placed, Schwab executes it. Customers can place a wide variety of investment orders online, including buying and selling stocks, bonds, and mutual funds and placing various types of simple and sophisticated trades, including purchasing short positions.

9. Like other online brokerage firms, Schwab uses automated systems to process and execute investment orders received from its customers.

*Schwab's Trading System Fails to Follow Customer Trading Instructions*

10. Recently, Schwab's online platform began malfunctioning when customers, including Plaintiff, attempted to close short positions taken on securities.

11. A short position refers to a trading technique in which an investor, like Plaintiff, sells a security with plans to profit by repurchasing it later at a lower price. In short selling, a position is opened by borrowing and then selling shares of a stock that the investor believes will decrease in value. Eventually, short sellers must return the shares they borrowed. The investor is betting the share price will decline, and new shares be purchased and given back to the stock lender at a lower price than originally borrowed.

12. To sell short, investors sell shares which are borrowed from a broker. Short sellers pay these stock lenders (here, Schwab) fees and interest while the short position is in place or "open."

13. Investing in short positions can be particularly profitable during times of significant stock market fluctuation, like that caused by the coronavirus pandemic. To be profitable in a short position, the price of the stock when closed must be lower than the price of the stock when the short position is purchased.

14. Short selling has a high risk/reward ratio: It can offer big profits, but losses can mount quickly and infinitely. Thus, it is critically important that the investor be able to end the

short position timely because if the stock price begins to rise rather than fall, the investor is exposed to significant, theoretically unlimited risk of loss. Ending the short position is known as "closing" it. To close a short position, an investor buys the same number of shares back on the market—hopefully at a price less than the price the investor paid for it—and returns them to the lender or broker. This is known as "buying to close" the short position.

15. The following is an example of the lifecycle of a short position: An investor thinks that ABC Company's stock is poised to fall after it reports quarterly results. To take advantage of this possibility, the investor opens a short position by "borrowing" 100 shares of ABC stock from the investment firm the investor uses for trades. At the time the short is opened and the stock sold to another investor, it is trading at $150 per share (for a total of $15,000). The investor made a good investment because in the following weeks, ABC Company reports weaker than expected revenue, resulting in ABC Company's shares dropping to $130. At this moment, the investor closes the short position by purchasing 100 shares of ABC Company for $130 per share to "cover" the position, thereby giving shares back to his investment firm and closing his short position. The trade results in a profit (before fees and costs) of $20 per share or $2,000.

16. The opposite of a short position is a "long" position. A long position is buying shares in a company and holding on to them, in hopes that the price of the stock will go up. The goal is to eventually sell the shares for more than you paid for them.

17. To purchase a short position at Schwab, investors, including Plaintiff and the Class members, must borrow shares of that stock in a Schwab margin account.

18. Schwab charges its customers interest on money borrowed on margin. The margin interest varies, but interest charges are assessed whenever money is borrowed on margin towards the purchase of securities. Interest is charged on the borrowed funds for the period of time the loan is outstanding. For a short position, Schwab charges interest on the price of the stock borrowed. As of May 28, 2020, Schwab's effective margin interest rates were between 6.575% and 8.325%.

19. As a result of this malfunction, Schwab's trading system does not "buy and close" short positions as instructed by its customers. Instead, Schwab's system simply adds shares to the customer's fictitious long position. That is, rather than buy and close as instructed by Schwab customers, the system incorrectly processes the trade as a buy and not a close. This results in the customer's short position being kept open *and* shares of the unwanted stock being added to the customer's account.

20. The financial consequences of the system's malfunction are significant. For illustrative purposes, assume a Class member is short 100 shares of ABC Company stock. To later close that open short position, the customer must buy 100 shares of ABC Company stock, and so instructs Schwab's online trading system to buy (and therefore close by purchasing) 100 shares of ABC Company. However, because of the defect, Schwab's system incorrectly processes the customer's buy and close instructions as an order to purchase 100 additional shares of ABC Company stock. The customer is then left with an open short position he or she wanted to close, plus additional shares of a stock the customer did not want to buy. Worse yet, these unwanted shares are also purchased on margin, thereby incurring Schwab's margin interest charges, while decreasing the customer's margin buying power.

21. Schwab employees admit its automated system is not working correctly. They acknowledge short trades not being closed as instructed, but instead treated as requests to buy and hold the stock long. Schwab has had developers and programmers working on this "big project" to figure out the cause and remedy it.

22. Plaintiff and Class members have been and will continue to be harmed by the ongoing trading system malfunction.

*Plaintiff's Transactions*

23. Plaintiff is a frequent trader. In the first quarter of 2020 alone, Plaintiff executed thousands of trades using his online Schwab trading account.

24. On April 20, 2020, Plaintiff submitted trade instructions through Schwab to close short positions on 6,300 shares of Royal Caribbean stock (NYSE: RCL). Plaintiff did so as he has done many times before – by hovering over the shorted RCL stock on his account

page, clicking "Close RCL" and then confirming the transaction by clicking "Place Order." Closing a short position of 6,300 shares is accomplished through the purchase of an equal number of the same company's shares. In Plaintiff's case, by purchasing 6,300 shares of Royal Caribbean stock, Schwab's trading system should process this transaction as a "buy and close."

25. However, Schwab's automated trading system acted contrary to Plaintiff's instructions to buy and close. Instead of purchasing 6,300 shares to buy and close Plaintiff's short position, Schwab's system erroneously purchased 6,300 shares long and kept open Plaintiff's short position.

26. Plaintiff noticed he was not closed out of his investment position as requested, and so again instructed Schwab's trading system (by clicking "Close RCL") to buy and "close" through the purchase of 6,300 shares. However, once again, Schwab's system failed to execute Plaintiff's order as instructed. Instead, it purchased another 6,300 shares of Royal Caribbean, but did not close Plaintiff's short position. This happened several times, and Schwab's system malfunction eventually left Plaintiff owning 31,500 shares of a stock he instructed Schwab to sell in the first place. These 31,500 shares Plaintiff never desired were purchased on margin (i.e., on loaned funds) and were valued at over $1.1 million. This all transpired over a 10-minute period during which Plaintiff repeatedly instructed Schwab's system to close his original position.

27. Given the risk of significant financial loss from being loaned over $1.1 million in Royal Caribbean stock he never wanted to begin with, Plaintiff attempted to mitigate the damages inflicted by Schwab's system malfunction and sold over $1.1 million in Royal Caribbean stock after-hours at a loss that exceeded $10,000.

28. The purchase of over $1.1 million in shares also greatly exceeded Plaintiff's margin buying power. This was also the result of Schwab's system malfunction. Because Plaintiff's trading instructions were to "close," Schwab's system ignored Plaintiff's margin buying power and erroneously processed the multiple "close" trades as covering the same position over and over—even though nothing was closed as instructed. Nevertheless, because

he was deemed to have exceeded his margin buying power and therefore trading with unsettled funds because of this, Schwab further harmed Plaintiff by removing his margin buying power for 90 days.

29. As Schwab representatives later explained, Schwab's system incorrectly processed Plaintiff's transactions as buying long positions while still keeping the short position open. Schwab's system kept adding 6,300 shares of Royal Caribbean stock to Plaintiff's account each time he attempted to close the original short position.

30. Approximately two days later, on April 22, 2020, Plaintiff again attempted to close short positions on other Royal Caribbean stock he owned by clicking "Close RCL". As before, Schwab's trading system did not execute the trade as Plaintiff instructed by buying to close his short position on RCL stock. Instead, Schwab's system again incorrectly purchased long positions of the same stock Plaintiff was attempting to sell.

31. That same day after experiencing the same defect twice in one week, Plaintiff called and spoke with a Schwab representative. The Schwab representative stated that its automated system is "getting confused and changing the type" of transaction, which results in trades not buying and closing positions as instructed, but adding to them. The Schwab representative further informed, Schwab was aware of the problem and had been working for several months to correct it.

32. Approximately one week later, a Resolution Manager in Schwab's Client Advocacy Team contacted Plaintiff and confirmed that Schwab's system failed to perform as Plaintiff instructed and as Schwab intended.

33. Despite conceding the defects in its trading system, Schwab has refused to fully compensate Plaintiff for his losses and refused to lift the 90-day restriction on using his margin account for trading.

## CLASS DEFINITION AND ALLEGATIONS

34. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Civil Code § 1781, and seeks certification of the following Class:

All Schwab brokerage account clients who placed an order to close a short trading position, but the order was not executed as made.

35. The Class excludes Schwab's officers and directors, current or former employees, as well as their immediate family members, other broker dealers, as well as any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

36. *Numerosity.* The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains thousands of members. While the precise number of Class members is unknown to Plaintiff, it is known to Defendant.

37. *Existence and Predominance of Common Questions of Law and Fact.* Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. All members of the Class have been subject to the same conduct and their claims arise from the same legal claims. The common legal and factual questions include, but are not limited to, the following:

(a) whether Schwab has a duty to follow the trading instructions of Plaintiff and members of the Class;

(b) whether Schwab's trading systems are defective;

(c) whether Schwab's trading systems code or otherwise record Plaintiff and Class members as in a boxed trading position when they are not;

(d) whether Schwab engaged in unlawful or unfair business practices;

(e) whether Schwab breached its duty of care to Plaintiff and Class members;

(f) whether the Plaintiff and the Class are entitled to injunctive relief;

(g) whether Schwab has been unjustly enriched by its improper course of action; and

(h) whether Plaintiff and members of the Class are entitled to equitable relief, and the proper measure of that equitable relief.

38. *Typicality.* Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff is a member of the Class that he seeks to represent.

39. *Adequacy of Representation.* Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in the prosecution of this type of class action litigation. Plaintiff has no adverse or antagonistic interests to those of the Class.

40. *Superiority.* A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. The burden and expense that would be entailed by individual litigation makes it impracticable or impossible for Class members to prosecute their claims individually. Further, the adjudication of this action presents no unusual management difficulties.

41. In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

42. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

## COUNT I

**Unlawful and Unfair Business Practices in
Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.***

43. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

///

///

44. Plaintiff, on behalf of himself and the Class, brings this cause of action for violations of the "unlawful" and "unfair" prongs of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

45. Plaintiff and Defendant are "persons" within the meaning of the UCL. Bus. & Prof. Code § 17201.

46. The UCL defines unfair competition to include any "unlawful" or "unfair" "business act or practice." Bus. & Prof. Code § 17200.

47. By committing the acts and practices alleged herein, Schwab has engaged in unlawful and unfair business practices in violation of the UCL.

48. Unlawful Conduct: In the course of conducting business, as a result of engaging in the conduct alleged in this Complaint, including failing to ensure that its systems follow the trading instructions provided by Plaintiff and Class members, Schwab has violated § 17200's prohibition against engaging in unlawful acts and practices by virtue of its conduct, which constitutes negligence and unjust enrichment.

49. Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

50. Unfair Conduct: Schwab's acts and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§ 17200, *et seq.* In the course of conduct business, Schwab has violated the UCL's proscription against unfair business practices by, among other things failing to take reasonable steps to ensure that its trading system carries out Plaintiff and Class members' instructions fully, promptly and accurately, failing to regularly and rigorously examine trade execution quality, failing to undo the trades its defective trading system executes, failing to close short positions as instructed, purchasing long positions that were not ordered, charging margin interest rates on the unwanted long positions, causing Plaintiff and Class members to use and exceed their margin buying power by virtue of the trades not executed as instructed, and not compensating Plaintiff and Class members for its negligence.

51. Schwab's wrongful conduct is substantially injurious to consumers, offends legislatively-declared public policy, and is immoral, unethical, oppressive, and unscrupulous. Schwab's practices are also contrary to legislatively declared and public policies that seek to foster trust and transparency in the securities marketplace. The gravity of Schwab's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Schwab's legitimate business interests other than engaging in the above-described wrongful conduct.

52. Plaintiff is a "person" within the meaning of Business & Professions Code section 17204, has suffered injury, and lost money or property, and therefore has standing to bring this cause of action for injunctive relief, restitution, disgorgement, and other appropriate equitable relief.

53. Pursuant to Business & Professions Code sections 17203 and 17205, Plaintiff seeks an injunction prohibiting Schwab from continuing such practices, restitution and all other relief this Court deems appropriate.

## COUNT II

### Negligence

54. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

55. The relationship between a customer (e.g., Plaintiff and Class members) and his/her broker-dealer (e.g., Schwab) is that of principal and agent. The broker, as agent, has a duty to carry out its customer's instructions promptly and accurately and to ensure the mechanisms it uses for this purpose function properly.

56. Schwab owed duties to Plaintiff and the Class, including a duty of care to act with the care, competence, and diligence normally exercised by brokers in similar circumstances.

57. Pursuant to its duty of care, Schwab was required to comply with the trading instructions of Plaintiff and Class members and to diligently and competently fulfill their trade requests.

58. By using its defective automated trading systems to process the investment orders placed by Plaintiff and Class members, which failed to execute their investment orders as instructed and purchased unwanted securities instead, Schwab was negligent and breached its duties owed to Plaintiff and the Class.

59. But for Schwab's negligent conduct, Plaintiff's and Class members' trades would have been executed as instructed: they would have closed short positions as desired in a timely manner, they would not have acquired long positions of stock they did not instruct Schwab to purchase for their accounts, they would not have been forced to take the risks of owning and selling the unwanted stock, they would not have been assessed and paid fees and commissions for selling the unwanted stock, they would not have been forced to spend the time and effort to sell the unwanted stock, and they would not have depleted their margin buying power as a result of buying the unwanted shares.

60. The injury and harm suffered by Plaintiff and the other Class members was the reasonably foreseeable result of Schwab's failure to exercise reasonable care in executing the investment trades as instructed.

61. Schwab's customers have been damaged as a result of Schwab's negligence, in an amount to be determined at trial.

## COUNT III

### Unjust Enrichment

62. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

63. By its wrongful conduct, Schwab was unjustly enriched at the expense of and to the detriment of Plaintiff and the Class. Schwab was unjustly enriched as a result of the compensation it received from processing investment trades in the opposite way instructed by Plaintiff and members of the Class.

64. Plaintiff and the Class seek restitution from Schwab and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Schwab from its wrongful conduct.

65. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Class as requested herein;

B. Awarding Plaintiff and the proposed Class members damages;

C. Awarding restitution to Plaintiff and the proposed Class members;

D. Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Schwab from continuing the unlawful practices as set forth herein, and directing Schwab to identify, with court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Schwab by means of any act or practice declared by this Court to be wrongful;

E. Awarding attorneys' fees and costs; and

F. Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: June 19, 2020

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
ALEKSANDR J. YARMOLINETS (276707)

By: /s/ Timothy G. Blood
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
ayarmolinets@bholaw.com

ROBBINS LLP
KEVIN A. SEELY (199982)
STEVEN M. MCKANY (271405)
DARNELL R. DONAHUE (281926)
5040 Shoreham Place
San Diego, CA 92122

BLOOD HURST & O'REARDON, LLP

Tel: 619/525-3990
619/525-3991 (fax)
kseely@robbinsllp.com
smckany@robbinsllp.com
ddonahue@robbinsllp.com

*Attorneys for Plaintiff*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Timothy G. Blood (149343) [SEE ATTACHMENT A]<br>Blood Hurst & O'Reardon, LLP<br>501 West Broadway, Suite 1490, San Diego, CA 92101<br>TELEPHONE NO.: 619/338-1100   FAX NO. *(Optional):* 619/338-1101<br>ATTORNEY FOR *(Name):* Plaintiff | FOR COURT USE ONLY<br><br>**FILED**<br>San Francisco County Superior Court<br><br>JUN 23 2020<br><br>CLERK OF THE COURT<br>*Deputy Clerk* |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco 94102-4515
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Robert Wright v. Charles Schwab & Co., Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited    [ ] Limited<br>(Amount      (Amount<br>demanded    demanded is<br>exceeds $25,000)   $25,000) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **CGC-20-585092**<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

   **Auto Tort**
   [ ] Auto (22)
   [ ] Uninsured motorist (46)
   **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
   [ ] Asbestos (04)
   [ ] Product liability (24)
   [ ] Medical malpractice (45)
   [ ] Other PI/PD/WD (23)
   **Non-PI/PD/WD (Other) Tort**
   [ ] Business tort/unfair business practice (07)
   [ ] Civil rights (08)
   [ ] Defamation (13)
   [ ] Fraud (16)
   [ ] Intellectual property (19)
   [ ] Professional negligence (25)
   [ ] Other non-PI/PD/WD tort (35)
   **Employment**
   [ ] Wrongful termination (36)
   [ ] Other employment (15)

   **Contract**
   [ ] Breach of contract/warranty (06)
   [ ] Rule 3.740 collections (09)
   [ ] Other collections (09)
   [ ] Insurance coverage (18)
   [ ] Other contract (37)
   **Real Property**
   [ ] Eminent domain/Inverse condemnation (14)
   [ ] Wrongful eviction (33)
   [ ] Other real property (26)
   **Unlawful Detainer**
   [ ] Commercial (31)
   [ ] Residential (32)
   [ ] Drugs (38)
   **Judicial Review**
   [ ] Asset forfeiture (05)
   [ ] Petition re: arbitration award (11)
   [ ] Writ of mandate (02)
   [ ] Other judicial review (39)

   **Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
   [ ] Antitrust/Trade regulation (03)
   [ ] Construction defect (10)
   [ ] Mass tort (40)
   [ ] Securities litigation (28)
   [ ] Environmental/Toxic tort (30)
   [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
   **Enforcement of Judgment**
   [ ] Enforcement of judgment (20)
   **Miscellaneous Civil Complaint**
   [ ] RICO (27)
   [X] Other complaint *(not specified above)* (42)
   **Miscellaneous Civil Petition**
   [ ] Partnership and corporate governance (21)
   [ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [X] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* 3: Violations of: B&P Code §17200; Negligence; and Unjust Enrichment
5. This case [X] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 19, 2020

Timothy G. Blood
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

BY FAX

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

*Robert Wright v. Charles Schwab & Co., Inc.*
San Francisco Superior Court – Civic Center Courthouse

## ATTACHMENT TO CIVIL CASE COVER SHEET (CM-010)

*Attorneys for Plaintiff Robert Wright*

BLOOD HURST & O'REARDON LLP
Timothy G. Blood (149343)
Thomas J. O'Reardon, II (247952)
Aleksandr J. Yarmolinets (276707)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
ayarmolinets@bholaw.com

ROBBINS LLP
Kevin A. Seely (199982)
Steven M. McKany (271405)
Darnell R. Donahue (281926)
5040 Shoreham Place
San Diego, CA 92122
Tel: 619/525-3990
619/525-3991 (fax)
kseely@robbinsllp.com
smckany@robbinsllp.com
ddonahue@robbinsllp.com

00165228

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
　Asbestos Property Damage
　Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
　Medical Malpractice– Physicians & Surgeons
　Other Professional Health Care Malpractice
Other PI/PD/WD (23)
　Premises Liability (e.g., slip and fall)
　Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
　Intentional Infliction of Emotional Distress
　Negligent Infliction of Emotional Distress
　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　Legal Malpractice
　Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
　Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
　Negligent Breach of Contract/ Warranty
　Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
　Collection Case–Seller Plaintiff
　Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
　Auto Subrogation
　Other Coverage
Other Contract (37)
　Contractual Fraud
　Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　Writ of Possession of Real Property
　Mortgage Foreclosure
　Quiet Title
　Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　Writ–Administrative Mandamus
　Writ–Mandamus on Limited Court Case Matter
　Writ–Other Limited Court Case Review
Other Judicial Review (39)
　Review of Health Officer Order
　Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
　Abstract of Judgment (Out of County)
　Confession of Judgment *(non-domestic relations)*
　Sister State Judgment
　Administrative Agency Award *(not unpaid taxes)*
　Petition/Certification of Entry of Judgment on Unpaid Taxes
　Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
　Declaratory Relief Only
　Injunctive Relief Only *(non-harassment)*
　Mechanics Lien
　Other Commercial Complaint Case *(non-tort/non-complex)*
　Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
　Civil Harassment
　Workplace Violence
　Elder/Dependent Adult Abuse
　Election Contest
　Petition for Name Change
　Petition for Relief From Late Claim
　Other Civil Petition

CM-010 [Rev. July 1, 2007]                **CIVIL CASE COVER SHEET**                Page 2 of 2