UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ROBERT WRIGHT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES SCHWAB & CO., INC.,<br><br>Defendant. | Case No. 20-cv-05281-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 17 |

## INTRODUCTION

This is a putative class action challenging a defect in Charles Schwab's online trading platform for stock transactions. The named plaintiff tried to close a "short" position in Royal Caribbean stock, and Schwab's automated system purchased the shares but did not close the short position, resulting in a loss exceeding $10,000.[1] The plaintiff's relationship with Schwab (like all Schwab customers) was governed by Schwab's brokerage agreement.

The plaintiff, individually and on behalf of the putative class, sued Schwab for (1) negligence (based on its defective trading system), (2) unjust enrichment (for the compensation Schwab received from processing botched trades), and (3) violations of the unlawful and unfair prongs of

---

[1] Compl. – ECF No. 1-1 at 3 (¶ 1), 7–9 (¶¶ 23–33). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 20-cv-05281-LB

1    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. Because the

2    parties have a brokerage agreement that governs their relationship, Schwab moved to dismiss the

3    claims on the grounds that the economic-loss rule bars the negligence claim, there is no

4    independent claim for unjust enrichment, there are no predicate claims for an "unlawful" UCL

5    claim, and there are no business practices plausibly establishing an "unfair" UCL claim. The court

6    grants the motion.

## STATEMENT

Schwab is a registered broker-dealer with the U.S. Securities and Exchange Commission and offers investment products and services, including online brokerage accounts that allow retail customers to buy and sell stocks and other investments.[2]

The transactions here involve the named plaintiff's shorting stocks. An investor shorts a stock by borrowing stock shares and selling them, betting that the stock price will fall and that the investor will be able to buy the stock later at a lower price (and retire the "borrowed" obligation at a profit). An example: an investor borrows 100 shares of stock, sells them for $15 per share (expecting that the share price will fall), the price falls to $10 per share, and the investor buys 100 shares at $10 per share and closes the short position at a profit.[3] Schwab makes money from transactions, including interest on the borrowed stock and other fees.[4]

The plaintiff alleges that Schwab's online platform for buying and selling stocks malfunctioned.[5] On April 20, 2020, the plaintiff tried to close a short position on 6,300 shares of Royal Caribbean stock. Schwab bought the replacement 6,300 shares to close the short position, but did not actually close the short position. The plaintiff tried several times (by clicking the "close" link) to close the short position, but each click resulted only in duplicate orders for the purchase of the replacement 6,300 shares (at the market price). In total, the plaintiff clicked the "close" link five times, resulting in the purchase of 31,500 shares, a $1.1 million margin balance,

---

[2] *Id.* at 3–5 (¶¶ 1, 7–9).

[3] *Id.* at 5–6 (¶¶ 11–12, 15).

[4] *Id.* at 6 (¶ 18).

[5] *Id.* at 3 (¶ 1), 7 (¶ 19).

and ultimately, a loss exceeding $10,000. (The plaintiff engaged in after-hours trading to mitigate the loss.[6]) The plaintiff had a similar experience on April 22, 2020.[7] Schwab's representative explained then that Schwab was aware of the issue and had been working on it for several months.[8]

The parties' brokerage agreement allowed the plaintiff to buy and sell "certain securities, stock options, and mutual funds" through his Schwab account.[9] Under the agreement, an investor must notify Schwab immediately if, among other things, the investor does not receive confirmation about an order or its execution.[10] By using the electronic platform, an investor "assume[s] any added risk that may result from the lack of human review of [an] order in exchange for the reduced commissions and potentially greater convenience of electronic trading."[11] An investor must "exercise caution before placing all orders" and must call a Schwab representative to assist him if he "wishes to change or cancel [a] market order. . . . Attempting to cancel and replace or change a market order through the Electronic Services can result in the execution of duplicate orders, which ultimately are [the investor's] responsibility.[12] Under the agreement, Schwab is not liable for events outside of its direct control, including "bugs, errors, configuration problems of incompatibility of computer hardware or software . . . ."[13]

---

[6] *Id*. at 7–8 (¶¶ 24–27).

[7] *Id*. at 9 (¶ 30).

[8] *Id*. (¶ 31).

[9] July 2019 Account Agreement, Ex. A to Landert Decl. – ECF No. 18-2 at 70 (¶ 1). The court considers the agreement under the contract under the incorporation-by-reference doctrine or by judicial notice. Fed. R. Evid. 201(b); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The plaintiff cannot plead around a contract governing the parties' relationship. *See Wine Bottle Recycling, LLC v. Niagara Sys. LLC*, No. 12-1924-SC, 2013 WL 5402072, at *3–4 (N.D. Cal. Sept. 26, 2013) (dismissing a plaintiff's fraud claim because it "is nothing more than Plaintiff's attempt to plead a contract claim in tort" and "permitting this work-around pleading would open the door to all manner of tort claims based only on . . . what the contract said").

[10] July 2019 Account Agreement, Ex. A to Landert Decl. – ECF No. 18-2 at 48 (¶ 31) ("You also agree to notify us immediately if you . . . fail to receive a message that an order you initiated through the services has been received or executed[,] fail to receive an accurate written confirmation of an order or its execution[, or] receive confirmation of an order that you did not place").

[11] *Id.* at 70–71 (¶ 2) (titled "Risks of Electronic Trading").

[12] *Id*. at 74 (¶ 9).

[13] *Id*. at 73 (¶ 5) (subheading "No Liability for Events Outside of Entities' Direct Control").

The court held a hearing on November 19, 2020 on Schwab's motion to dismiss. All parties consented to the undersigned's jurisdiction.[14]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

---

[14] Consents – ECF Nos. 14, 16.

ORDER – No. 20-cv-05281-LB         4

**ANALYSIS**

Schwab moved to dismiss the plaintiff's complaint because (1) the economic-loss rule bars the negligence claim, (2) unjust enrichment is not independently actionable under California law, and (3) the plaintiff does not state a UCL claim. The court grants the motion with leave to amend.

### 1. The Economic-Loss Rule Bars the Negligence Claim

"The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *accord In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012) ("Purely economic damages to a plaintiff which stem from disappointed expectations from a commercial transaction must be addressed through contract law; negligence is not a viable cause of action for such claims."). "Economic loss consists of damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits — without any claim of personal injury or damages to other property." *Robinson Helicopter Co.,* 34 Cal. 4th at 988 (cleaned up). The purpose of the rule is to prevent "the law of contract and the law of tort from dissolving one into the other." *Id.* "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (cleaned up). "An omission to perform a contract obligation is never a tort[] unless that omission is also an omission of a legal duty." *Id.*; *accord JMP Secs. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. July 23, 2012) ("the economic loss rule, in summary, is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement") (cleaned up).

The plaintiff alleges only an economic loss, and Schwab has no duty independent of the contract that would allow a tort claim. The economic-loss doctrine bars the negligence claim. *JMP Secs.*, 880 F. Supp. 2d at 1042.

Citing *Abrams v. Blackburne & Sons Realty Capital Corp.*, the plaintiff nonetheless argues that the negligence claim is actionable because Schwab acted as his broker-agent, owed him a "special" fiduciary duty to execute his trades "as requested," and breached the duty when it did not execute his orders "as instructed."[15] No. 19-cv-06947-CAS (AS), 2019 WL 8640656, at *15 (C.D. Cal. Dec. 2, 2019). *Abrams* involved a lending company's material misrepresentations in the solicitation documents that they sent to the plaintiffs to induce them to invest in a loan. *Id.* at *1. The plaintiffs "adequately alleged that [the defendant] and its agents had a special relationship with the plaintiffs as their brokers-advisors at the time of the alleged misrepresentations," which were before any contractual relationship. *Id.* at *16. Excepted from the economic-loss rule are (among other things) misrepresentations that induce a plaintiff to enter into a contract. *Robinson Helicopter Co.,* 34 Cal. 4th at 989–90. There is no similar misconduct here that induced the plaintiff to accept Schwab's brokerage agreement. At best, the plaintiff alleges a negligent glitch on Schwab's trading platform months after he entered into the agreement. Any responsibility for that glitch is governed by the brokerage agreement.

As Schwab points out, the weight of authority supports the conclusion that when a contract creates an agency relationship and a resulting fiduciary duty between a broker and a customer, the broker does not have a fiduciary responsibility to the customer that is independent of the contract, and the economic-loss rule bars tort claims (absent fraud or intentionally deceptive conduct).[16] *See, e.g.*, *Bentham v. Bingham Law Grp.*, No. 13-cv-1424-MMA (WVG), 2013 WL 12186171, at *12 (S.D. Cal. Nov. 15, 2013) (allowed claims for breach of fiduciary duties to proceed because the plaintiff alleged intentional conduct involving deceit); *Dwyer v. Bicoy*, No. SACV 09-0064-JVS (RnBx), 2009 WL 10697966, at *4–5 (C.D. Cal. 2008) (contract created agency relationship that gave rise to fiduciary duties and thus barred the plaintiff's claims for negligence), *Pollock v. Vanguard Grp. Inc.*, No. 16-cv-6482-JLS-JCGx, 2017 WL 4786007, at *3–6 (C.D. Cal. Aug. 21, 2017) (economic-loss rue barred negligence claim for management of investment accounts

---

[15] Opp'n – ECF No. 21 at 11–12.

[16] Reply – ECF No. 23 at 9–10 (collecting cases).

1  because the relationship between the plaintiff and the brokerage firm "with respect to the
2  brokerage account and the IRA was governed by contract").

3  The economic-loss rule bars the negligence claim. The court dismisses it with leave to amend a
4  contract claim.

### 2. The Parties' Contract Precludes a Claim for Unjust Enrichment

The court dismisses the unjust-enrichment claim because the parties have a contract, and there thus cannot be a separate claim for unjust enrichment.

Courts in this district have allowed standalone claims for unjust enrichment (even if there is a contract claim) to allow recovery of restitution "either (1) in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or ineffective, or (2) where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct, but the plaintiff has chosen not to sue in tort." *Oracle Corp. v. SAP AG*, No. C 07-1658 PJH, 2008 WL 5234260, at *8 (N.D. Cal. Dec. 15, 2008) (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004)); *see Wolf v. Wells Fargo Bank, N.A.*, No. C 11-01337-WHA, 2011 WL 4831208, at *8 (N.D. Cal. Oct. 12, 2011) ("Restitution [under an unjust-enrichment theory] may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason.") (citation omitted); *Yothers v. JFC Int'l, Inc.*, No. 20-cv-01657-RS, 2020 WL 5015262, at *6 (N.D. Cal. May 14, 2020).[17]

But there is an enforceable contract here, and there is no fraud or similar conduct. "[U]njust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (cleaned up); *cf. Tawfik v. JPMorgan Chase Bank, N.A.*, No. 20-cv-02946-JSC, 2020 WL 5074398, at *8 (N.D. Cal. Aug. 26, 2020) ("As a matter of law, the existence of the parties' valid contract — its disputed interpretation notwithstanding — precludes Plaintiffs from bringing an unjust enrichment claim").

---

[17] Opp'n – ECF No. 21 at 12–13 (collecting cases).

ORDER – No. 20-cv-05281-LB         7

The court dismisses the plaintiff's unjust-enrichment claim with prejudice.

### 3. There is no Plausible UCL Claim[18]

The plaintiffs advance a UCL claim under the "unlawful" and "unfair" prongs of the statute. The plaintiffs do not state a UCL claim under either prong.

The "unlawful prong" of the UCL "incorporates other laws to make them actionable." *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010). "Generally, a violation of almost any law may serve as a basis for a UCL claim." *Id.* (quotation omitted). The court dismissed the negligence and unjust-enrichment claims, and thus, there are no predicate claims for an "unlawful" UCL claim.

The plaintiff does not plausibly plead an "unfair" UCL claim either. He alleges that broker-dealers must properly exercise trades and maintain an error-free platform and that

> Schwab's wrongful conduct is substantially injurious to consumers, offends legislative-declared public policy, and is immoral, unethical, oppressive, and unscrupulous. Schwab's practices are also contrary to legislatively declared and public policies that seek to foster trust and transparency in the securities marketplace. The gravity of Schwab's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Schwab's legitimate business interest other than engaging in the above-described wrongful conduct.[19]

These conclusory allegations do not plead an "unfair" UCL claim under any of the three tests that courts apply.

First, a public policy that is a predicate to an "unfair" UCL claim "must be tethered to specific constitutional, statutory, or regulatory provisions." *Phipps v. Wells Fargo Bank, N.A.*, No. CV F 10–2025 LJO SKO, 2011 WL 302803, at *16 (E.D. Cal. Jan. 27, 2011) (cleaned up). The plaintiffs do not allege that here. *Schmidt v. Wells Fargo Bank, N.A.*, C 19-01509 WHA, 2013 WL 3187418, at *7 (N.D. Cal. June 21, 2013) (a "cursory" allegation that Wells Fargo Bank's conduct "gave an unfair competitive advantage over [its] competitors" did not state an "unfair" UCL claim

---

[18] The court does not reach Schwab's argument that the UCL does not apply to securities transactions. Mot. – ECF No. 17 at 10.

[19] Compl. – ECF No. 1-1 at 13 (¶ 51).

ORDER – No. 20-cv-05281-LB           8

because it "fail[ed] to allege any specific constitutional, statutory, or regulatory provision to which Wells Fargo's conduct is tethered") (cleaned up).

Second, technical glitches on the Schwab platform are not the business practices that are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Phipps*, 2011 WL 302803 at *16.

Third, "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that the consumers could not reasonably have avoided." *Id.* The plaintiff's recitation of the legal standard and conclusory allegations of a UCL violation do not state an "unfair" UCL claim. *See Schmidt*, 2013 WL 3187418, at *7.

The court dismisses the UCL claim.

## CONCLUSION

The court grants Schwab's motion to dismiss. The plaintiff must file an amended complaint within 21 days of this order.

This disposes of ECF No. 17.

**IT IS SO ORDERED.**

Dated: November 20, 2020

LAUREL BEELER
United States Magistrate Judge