BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
ALEKSANDR J. YARMOLINETS (276707)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
ayarmolinets@bholaw.com

ROBBINS LLP
KEVIN A. SEELY (199982)
TREVOR S. LOCKO (323313)
5040 Shoreham Place
San Diego, CA  92122
Tel: 619/525-3990
619/525-3991 (fax)
kseely@robbinsllp.com
tlocko@robbinsllp.com

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT WRIGHT, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES SCHWAB & CO., INC.,<br><br>Defendant. | Case No: 3:20-CV-05281-LB<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Magistrate Judge Laurel Beeler<br>Courtroom B, 15th Floor<br><br>Complaint Filed:    June 23, 2020<br>Trial Date:             Not Set<br><br>**JURY TRIAL DEMANDED** |

BLOOD HURST & O' REARDON, LLP

Plaintiff Robert Wright brings this consumer class action on behalf of himself and all others similarly situated against defendant Charles Schwab & Co., Inc. ("Schwab") and states:

## NATURE OF THE ACTION

1.      Schwab is a retail brokerage firm. Its clients instruct Schwab on which security trades they wish to make through Schwab's automated online brokerage system. Schwab then executes the requested trades on behalf of its clients. This action arises from Schwab's failure to execute certain trades as directed, as it is required to do as a fiduciary and pursuant to a contractual obligation it owes to its customers. As a result, this action involves Schwab's breach of its fiduciary duty of best execution and its breach of the contract governing the trading relationship between Schwab as a broker and its clients as equities traders.

2.      To make securities trades, each client is required to enter into a Schwab One® Account Agreement ("Brokerage Agreement") to gain access to Schwab's online trading platform. The Brokerage Agreement obligates Schwab to purchase and sell securities for the clients' accounts pursuant to clients' instructions. *See* Ex. A hereto (the Brokerage Agreement).[1] This aspect of the Brokerage Agreement mirrors Schwab's independent fiduciary duty of best execution, which also obligates a broker to timely purchase and sell securities for the clients' accounts pursuant to clients' instructions. This class action arises from Schwab's failure to execute Plaintiff's and the other Class members' orders pursuant to their instructions due to a malfunction of Schwab's online trading system that processes certain types of trades in the opposite way instructed by the client. Because of the malfunction, when clients act to close their "short" trading positions, the malfunction causes the online system to instead purchase "long" positions while keeping the short positions open and active. As a result of Schwab's malfunctioning system, Plaintiff and the other Class members

_____

[1]      Attached as Exhibit A is the July 2019 Schwab One® Account Agreement between Plaintiff and Schwab that, according to Schwab (ECF No. 18-1 at ¶ 3) was in effect at the time Plaintiff established his Schwab account. Attached as Exhibit B is the July 2020 Schwab One® Account Agreement. *See also* ECF No. 18-4. As they relate to Plaintiff's claims at issue there are no material differences between the July 2019 Brokerage Agreement and the July 2020 Brokerage Agreement.

BLOOD HURST & O' REARDON, LLP

acquired investments they did not order and were forced to hold investments they had instructed Schwab to sell.

3.      Plaintiff brings this action on behalf of himself and others similarly situated to obtain injunctive relief in accordance with the *McGill* Rule (*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)) and to recover their monetary losses and allege claims for breach of contract and for violations of California's unfair competition law.

**JURISDICTION AND VENUE**

4.      This action was initially filed in the Superior Court for the State of California for the County of San Francisco, Case No. CGC-20-585092. Defendant removed the case to this Court alleging jurisdiction pursuant to 28 U.S.C. § 1332(d).

5.      This Court has jurisdiction over the claims asserted herein on behalf of a nationwide class pursuant to 28 U.S.C. § 1332(d), as amended in February 2005 by the Class Action Fairness Act. Jurisdiction is proper because:

(a)      The proposed class includes more than 100 members, and the named plaintiff and many of the class members are citizens of states that are diverse from the state of Defendant's citizenship and domicile; and

(b)      The amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and, Defendant has purposefully availed itself of the privilege of conducting business activities within the State of California, where it is incorporated and where it maintains its principal place of business; where its officers direct, control, and coordinate Schwab's activities, and where Schwab engaged in the unlawful conduct alleged herein.

6.      Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(1) because Schwab is headquartered in this District.

**PARTIES**

**Plaintiff**

7.      Plaintiff Robert Wright is a citizen of the State of California and a resident of Los Angeles County. Plaintiff is a retail customer of defendant Schwab. As part of opening a

BLOOD HURST & O' REARDON, LLP

1  brokerage account with Schwab, Plaintiff entered into the Brokerage Agreement with Schwab.

2  *See* Ex. A.

3      8.    As described more fully below, on April 20, 2020, Plaintiff submitted trade

4  instructions to Schwab and according to Schwab's instructions using Schwab's online trading

5  system to close short positions he owned on Royal Caribbean stock. He did so by clicking

6  "close." However, Schwab's system did not execute the trade as Plaintiff instructed. Instead of

7  closing Plaintiff's short position on 6,300 shares of Royal Caribbean stock—which is

8  accomplished by purchasing 6,300 shares of the stock—Schwab's system purchased for

9  Mr. Wright 6,300 long position shares of Royal Caribbean stock, but did not close his short

10  position.

11      9.    This erroneous transaction is because of a malfunction in Schwab's online

12  trading system that does not buy shares and close short positions as the client instructs;

13  instead, the system improperly buys additional long position shares and keeps open short

14  positions. This malfunction happened several times, and Schwab's trading system defect

15  eventually left Plaintiff owning 31,500 shares of a stock (valued at over $1.1 million) that he

16  had instructed Schwab to get him out of in the first place.

17      10.    Following the April 20, 2020 incident described above, Plaintiff immediately

18  informed Schwab and spoke with a client account representative about the malfunction.

19  However, Schwab took no substantive action to correct the harm caused by the malfunction.

20      11.    Two days later, on April 22, 2020, Plaintiff again attempted to close short

21  positions on stock he owned. As before, Schwab's trading system did not execute the trade as

22  Plaintiff instructed by closing the short position, but kept open the short position and

23  purchased for Plaintiff's account long positions of the same stock he was attempting to sell.

24  Plaintiff immediately informed Schwab of the malfunction again and spoke with another client

25  account representative. The same malfunction has happened additional times since the first

26  occurrence. With these later malfunctions, after Plaintiff again contacted Schwab about its

27  failure to execute trades as instructed, Schwab admitted its error.

28

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

12.     As a result of Schwab failing to execute his purchase orders as instructed, Plaintiff lost approximately $10,000, thereby suffering injury in fact and losing money. Plaintiff desires to continue to maintain and place investment orders through his Schwab brokerage account, provided the malfunction is corrected. Nevertheless, unless and until Schwab corrects the malfunction, Plaintiff will be subjected to Schwab's ongoing conduct complained of in this Complaint.

**Defendant**

13.     Defendant Schwab is a California corporation with its principal place of business in San Francisco, California. Schwab is a registered broker-dealer with the U.S. Security and Exchange Commission in all fifty states and is a member of the Financial Industry Regulatory Authority, Inc. (FINRA). It offers investment products and services, including online brokerage accounts, to retail clients throughout the United States, including tens of thousands of clients throughout California. Schwab's clients maintain more than 12.3 million active brokerage accounts with over $4 trillion in client assets.

## FACTUAL ALLEGATIONS

*Schwab's Online Brokerage Accounts*

14.     In order to access Schwab's online trading platform, a client must submit an application and, once approved, execute Schwab's standardized Brokerage Agreement. Pursuant to this Brokerage Agreement entered into between Plaintiff and Class members on the one hand and Schwab on the other, Schwab agrees to purchase and sell securities pursuant to the client's instructions:

> When we approve your application and subject it to credit verification, we will open a Schwab One® Account for you and act as your broker to purchase and sell securities for your Account and on your instructions.

Exhibit A (Brokerage Agreement) at 29; *see also* Exhibit B at 29 (same contractual term in the July 2020 brokerage agreement). Schwab also agrees that "If we do not complete a transaction to or from your Account on time or in the correct amount according to our agreement with you, we may be liable for your losses or damages." Exhibit A at 16; Exhibit B at 16.

15.     Schwab's contractual duty to purchase and sell securities according to its client's instructions is consistent with Schwab's fiduciary duty as a securities broker to timely execute orders as instructed by the client.

16.     As a securities broker, Schwab buys and sells securities as an agent for Plaintiff's and Class member's accounts and serves as their fiduciary in this broker-client relationship.

17.     After setting up an account at Schwab.com and depositing funds into it, the client can place investment orders online. Once an order is placed, Schwab executes it. Clients can place a wide variety of investment orders online, including buying and selling stocks, bonds, and mutual funds and placing various types of simple and sophisticated trades, including purchasing short positions.

18.     Like other online brokerage firms, Schwab uses an automated online trading platform that allows its clients to instruct Schwab to purchase or sell orders using clients' computers, tablets or phones, which Schwab then executes on their behalf.

***Schwab's Trading System Fails to Follow Client Trading Instructions***

19.     Recently, Schwab's online platform began malfunctioning when clients, including Plaintiff, attempted to short positions they owned.

20.     A short position, or short selling, refers to a trade in which an investor, like Plaintiff, sells a security he does not own with plans to profit by repurchasing it later at a lower price. A short position is opened by borrowing and then selling shares of a stock that the investor believes will decrease in value. Short sellers pay the stock lenders (here, Schwab) fees and interest while the short position is in place or "open."

21.     To end a short position, or "close" it, short sellers must return the shares they borrowed by purchasing them on the market. An investor buys the same number of shares back on the market—hopefully at a price less than the price the investor paid for it—and returns them to the lender or broker. This is known as "buying to close" the short position.

22.     For a short sale to be profitable, the price of the "shorted" stock must be lower when the position is closed than the price of the stock when the short position is opened.

BLOOD HURST & O' REARDON, LLP

23.     Short selling has a high risk/reward ratio: It can offer big profits, but losses can mount quickly and infinitely. Thus, it is critically important that the investor be able to end the short position timely because if the stock price begins to rise rather than fall, the investor is exposed to significant, theoretically unlimited risk of loss. The unlimited risks created by short selling is compounded because short positions are also purchased on margin (i.e., using funds borrowed from the broker). Investing in short positions can be particularly profitable during times of significant stock market fluctuation, like that caused by the coronavirus pandemic.

24.     The following is an example of the lifecycle of a short position: An investor thinks that ABC Company's stock is poised to fall after it reports quarterly results. To take advantage of this possibility, the investor opens a short position by "borrowing" 100 shares of ABC stock from a securities broker (or another investment firm) and selling them on the market. At the time the short is opened and the stock sold to another investor, it is trading at $150 per share (for a total of $15,000). The investor made a good investment because in the following weeks, ABC Company reports weaker than expected revenue, resulting in ABC Company's shares dropping to $130. At this moment, the investor closes the short position by purchasing 100 shares of ABC Company for $130 per share to "cover" the position, thereby giving shares back to his investment firm and closing his short position. The trade results in a profit (before fees and costs) of $20 per share or $2,000.

25.     The opposite of a short position is a "long" position. A long position is buying shares in a company and holding on to them, in hopes that the price of the stock will go up. The goal is to eventually sell the shares for more than you paid for them.

26.     To purchase a short position on Schwab's online trading platform, investors, including Plaintiff and the Class members, must borrow shares of that stock from Schwab through their personal margin account. If an investor does not have enough liquidity in their margin account, Schwab will lend the necessary funds to the investor, which is called borrowing on margin.

27.     Schwab charges its clients interest on money borrowed on margin. The margin interest varies, but interest charges are assessed for the period of time the loan is outstanding.

BLOOD HURST & O' REARDON, LLP

For a short position, Schwab charges interest on the price of the stock borrowed. As of May 28, 2020, Schwab's effective margin interest rates were between 6.575% and 8.325%.

28.    In breach of the Brokerage Agreement and in violation of Schwab's duty to follow client instructions, Schwab's online trading system has a malfunction which directly causes Schwab to fail to "act as your broker to purchase and sell securities for your Account and on your instructions." Ex. A (Brokerage Agreement) at 29. As a result of this malfunction, Schwab's trading system does not "buy and close" short positions as instructed by its clients. Instead, Schwab's system incorrectly adds shares to the client's account by forcing them to take a long position. That is, rather than buy and close as instructed by its clients, Schwab incorrectly processes the trade as a buy and not a close. This results in the client's short position being kept open *and* shares of the unwanted stock being added to the client's account.

29.    The financial consequences of the system's malfunction are significant. For illustrative purposes, assume a Class member is short 100 shares of ABC Company stock. To later close the ABC short position, the client must buy 100 shares of ABC Company stock, and so instructs Schwab's online trading system to buy (and therefore close by purchasing) 100 shares of ABC Company. However, because of the defect, Schwab's system incorrectly processes the client's buy and close instructions as an order to purchase 100 additional shares of ABC Company stock. The client is then left with an open short position he or she wanted to close, plus an additional long position that the client never intended to buy. Worse yet, these unwanted shares are also purchased on margin, thereby incurring Schwab's margin interest charges, while decreasing the client's margin buying power.

30.    Schwab employees admit its automated system is not working correctly. They acknowledge short trades are not being closed as instructed, but instead treated as requests to buy and hold the stock long. Schwab has had developers and programmers working on this "big project" to figure out the cause and remedy it.

31.    Plaintiff and Class members have been and will continue to be harmed by the ongoing trading system malfunction.

BLOOD HURST & O' REARDON, LLP

*Plaintiff's Transactions*

32.　　Plaintiff is a frequent trader. In the first quarter of 2020 alone, Plaintiff executed thousands of trades using his online Schwab trading account.

33.　　On April 20, 2020, Plaintiff placed a "buy and close" order on a 6,300-share short sale of Royal Caribbean stock (NYSE: RCL). Plaintiff did so as he has done many times before—by hovering over the shorted RCL stock on his account page, clicking "Close RCL" and then confirming the transaction by clicking "Place Order." To close Plaintiff's short position as Plaintiff instructed, Schwab's trading platform had to purchase 6,300 RCL shares and return them to Schwab. Once the short position was closed, Schwab would have to adjust Plaintiff's margin loan amount. If the short trade was profitable for Plaintiff (i.e., the stock price had gone down), the related margin loan would have been eliminated and, if not (i.e., the stock price had gone up), Plaintiff's margin account balance would be reduced by an amount necessary to repurchase the shorted shares.

34.　　However, Schwab's automated trading system acted contrary to Plaintiff's instructions to "buy and close." Instead of purchasing 6,300 shares to buy and close Plaintiff's short position, Schwab's system erroneously purchased 6,300 shares long and kept open Plaintiff's short position.

35.　　Plaintiff noticed he was not closed out of his investment position as requested, and so again instructed Schwab's trading system (in accordance with Schwab's directions by clicking "Close RCL") to buy and close through the re-purchase of 6,300 shares. However, once again, Schwab's system failed to execute Plaintiff's order as instructed. Instead, it purchased another 6,300 shares of Royal Caribbean, but did not close Plaintiff's short position. This happened several times in a row, and Schwab's system malfunction eventually left Plaintiff owning 31,500 shares of a stock that he never instructed Schwab to purchase long in the first place. Moreover, making matters worse, these 31,500 shares that Plaintiff never desired were purchased long on margin (i.e., on loaned funds subject to interest charges) and were valued at over $1.1 million. This all transpired over a 10-minute period during which Plaintiff repeatedly instructed Schwab's system to close his original position.

36.     Upon realizing that Schwab's system placed him into $1.1 million long position in Royal Caribbean, Plaintiff informed Schwab that Schwab's system had malfunctioned and that trades were executed inconsistent with his instructions. Schwab did not correct its errors, and left Plaintiff's Royal Caribbean long and short positions open, thereby failing to timely execute a securities trade as instructed.

37.     Given the risk of significant financial loss from a $1.1 million margin loan on Royal Caribbean stock he never instructed Schwab to purchase or hold, Plaintiff attempted to mitigate the damages inflicted by Schwab's system malfunction and sold over $1.1 million in Royal Caribbean stock after-hours at a loss to Plaintiff that exceeded $10,000.

38.     Moreover, to compound the enormity of the harm and loss due to Schwab's conduct, the 31,500 shares of Royal Caribbean stock that Schwab wrongly purchased, inconsistent with Plaintiff's instructions, forced Plaintiff into a $1.1 million-margin loan, on a margin account balance of $60,000 (less than 1 percent of the margin loan). This was also the result of Schwab's system malfunction. Plaintiff's orders were to "buy and close," but Schwab's system ignored Plaintiff's margin buying power and erroneously processed the multiple "buy and close" orders as regular buy orders, placing Plaintiff into long positions over and over—even though nothing was closed as Plaintiff instructed, thereby failing to timely execute a securities trade as instructed.

39.     In addition to all of the above, Schwab further harmed Plaintiff by wrongfully removing his margin buying power for 90 days.

40.     When the malfunction happened to him again, a Schwab representative admitted that Schwab's system incorrectly processed Plaintiff's transactions as buying long positions while still keeping the short position open. Schwab's system kept adding 6,300 shares of Royal Caribbean stock to Plaintiff's account each time he instructed Schwab to close the original short position.

41.     Another malfunction happened on April 22, 2020. There, Plaintiff instructed Schwab, via its online trading platform, to close Plaintiff's new short positions in Royal Caribbean stock by clicking "Close RCL". As before, Schwab's trading system did not execute

BLOOD HURST & O' REARDON, LLP

the trade as Plaintiff instructed by buying to close his short positions, but instead incorrectly purchased long positions of the same stock Plaintiff was instructing Schwab to sell.

42.     Plaintiff again immediately contacted Schwab to inform it of the malfunction and called and spoke with a Schwab representative. The Schwab representative admitted that its automated system is "getting confused and changing the type" of transaction, which results in trades not buying and closing positions as instructed, but instead adding to the position. The Schwab representative further informed Plaintiff that Schwab was aware of the problem and had been working for several months to correct it.

43.     Approximately one week later, a Resolution Manager in Schwab's Client Advocacy Team contacted Plaintiff and confirmed that due to its ongoing system malfunction, Schwab failed to execute Plaintiff's trades as Plaintiff instructed.

44.     Schwab has not fully compensated Plaintiff for his losses.

***Schwab Breached the Brokerage Agreement and Violated its Duty of Best Execution***

45.     Pursuant to the standard adhesionary Brokerage Agreement that Schwab drafted, Schwab agrees to purchase and sell securities pursuant to the client's instructions:

> When we approve your application and subject it to credit verification, we will open a Schwab One® Account for you and act as your broker to purchase and sell securities for your Account and on your instructions.

Exhibit A (Brokerage Agreement) at 29; *see also* Exhibit B at 29 (same contractual term in the July 2020 brokerage agreement).

46.     The Brokerage Agreement also provides that Schwab is liable to its clients, such as Plaintiff and the Class members if Schwab "do[es] not complete a transaction to or from [their] Account on time or in the correct amount" except when an error in placing the order "is beyond [Schwab's] control." Ex. A at 16-17 (section of the Brokerage Agreement entitled "Our Liability for Failure to Complete Transactions"); *see also* Exhibit B at 16-17 (same).

47.     Schwab's online trading platform is within Schwab's control and Schwab has an obligation to complete each client order as the investor instructs. Schwab is responsible for the design, operation and maintenance of its trading platform. According to Schwab's client

BLOOD HURST & O' REARDON, LLP

account representative, at the time Plaintiff's orders were executed inconsistent with his instruction, Schwab was aware of the malfunction in its trading platform and had been unsuccessfully working on it for months.

48.     As a FINRA member and as a matter of law, Schwab must also comply with the Best Execution rule pursuant to its fiduciary duty of best execution. The Best Execution rule requires Schwab to use "reasonable diligence" in executing client orders, including an obligation to ensure that the order is executed pursuant to the "terms and conditions of the order." *See*, *e.g*., FINRA Rule 5310. For purposes of fulling its duty of Best Execution, Schwab "must make every effort to execute a marketable client order that it receives fully and promptly." *See*, *e.g*., FINRA Rule 5310, Supplementary Material .01.

49.     Schwab has failed to comply with the Best Execution rule because its online trading platform executed client orders contrary to the order's terms when instead of buying and closing an existing short position, the short positions were kept open and new undesired and damaging long positions were purchased. Schwab has failed to execute the orders of Plaintiff and Class members fully and promptly. Any effort by Schwab to limit its obligation to comply with the Best Execution rule via contract violates California law, including the fiduciary duty of best execution and public policy.

## CLASS DEFINITION AND ALLEGATIONS

50.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of a nationwide class consisting of:

> All Schwab brokerage account clients who placed an order to close a short trading position, but the order was not executed as made.

51.     The Class excludes Schwab's officers and directors, current or former employees, as well as their immediate family members, other broker dealers, as well as any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

52.     Plaintiff's claims are typical of the claims of the members of the Class, because Plaintiff and all other members of the Class were damaged by the same wrongful conduct committed by Defendant, as alleged more fully herein.

53.     Plaintiff will fairly and adequately protect the interests of the Class. The interests of the class representative are coincident with, and not antagonistic to, the interests of the other members of the Class.

54.     Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

55.     Questions of law and fact common to the members of the Class are central here and predominate over questions that may affect only individual members. Among the questions of law and fact common to the Class are:

(a)     whether Schwab has a contractual duty to follow the trading instructions of Plaintiff and members of the Class;

(b)     whether Schwab's online trading platform is defective;

(c)     whether Schwab's online trading platform codes or otherwise records Plaintiff and Class members as in a boxed trading position when they are not;

(d)     whether Schwab engaged in unlawful or unfair business practices;

(e)     whether Schwab breached its contractual duty to execute Plaintiff's and Class members' orders consistent with their instructions;

(f)     whether Schwab's failure to execute Plaintiff's and Class members' orders consistent with their instructions violates the best execution rule;

(g)     whether the Plaintiff and the Class are entitled to injunctive relief; and

(h)     whether Plaintiff and members of the Class are entitled to equitable relief, and the proper measure of that equitable relief.

56.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from

BLOOD HURST & O' REARDON, LLP

the issues raised by this action. The burden and expense that would be entailed by individual litigation makes it impracticable or impossible for Class members to prosecute their claims individually. Further, the adjudication of this action presents no unusual management difficulties.

57.    In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

58.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

## <u>COUNT I</u>

### Unlawful and Unfair Business Practices in
### Violation of Cal. Bus. & Prof. Code §§ 17200*, et seq.*

59.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60.    Plaintiff, on behalf of himself and the Class, brings this cause of action for violations of the "unlawful" and "unfair" prongs of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

61.    Plaintiff and Defendant are "persons" within the meaning of the UCL. Bus. & Prof. Code § 17201.

62.    The UCL defines unfair competition to include any "unlawful" or "unfair" "business act or practice." Bus. & Prof. Code § 17200.

63.    By committing the acts and practices alleged herein, Schwab has engaged in unlawful and unfair business practices in violation of the UCL.

64.    Unlawful Conduct: In the course of conducting business, as a result of engaging in the conduct alleged in this complaint, including failing to ensure that its online trading platform executed stock purchase and sell orders per the instructions provided by Plaintiff and

BLOOD HURST & O' REARDON, LLP

Class members, Schwab has violated § 17200's prohibition against engaging in unlawful acts and practices by virtue of its conduct, which constitutes a breach of contract, breach of its fiduciary duty to follow the client's order instructions (12 Am. Jur. 2d Brokers § 184), and violates the best execution rule.

65.     Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

66.     Unfair Conduct: Schwab's acts and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§ 17200, *et seq*. In the course of conducting business, Schwab has violated the UCL's proscription against unfair business practices by, among other things: (1) failing to take reasonable steps to ensure that its online trading platform executes Plaintiff's and Class members' order instructions fully, promptly and accurately, (2) failing to regularly and rigorously examine trade execution quality, (3) failing to undo the trades its defective trading system executes, (4) failing to close short positions as instructed, (5) purchasing long positions that were not ordered, (6) charging margin interest rates on the incorrectly purchased long positions, (7) causing Plaintiff and Class members to use and exceed their margin buying power by virtue of the orders not executed as instructed, (8) suspending or removing client margin buying power, and (9) not compensating Plaintiff and Class members for its wrongdoing and their losses. Schwab's conduct as described herein violates the duty of best execution and the policies behind that duty. All of these unfair business practices and the cascading deluge of harm to Plaintiff and Class members are because Schwab fails to carry out the most basic duty and obligation of all stockbrokers: to carry out the client's instructions in executing buy or sell orders. Indeed, this obligation is so fundamental that in Paragraph 1 of the Brokerage Services section of its standardized Brokerage Agreement, Schwab promises it will "purchase and sell securities for your Account *and on your instructions*." Exhibit A at 29 (emphasis added).

67.     Schwab's unfair business conduct is substantially injurious to consumers, offends legislatively-declared public policy, and is immoral, unethical, oppressive, and

1   unscrupulous. As explained above, Schwab fails to follow client instructions in connection

2   with short sales, which involve borrowed funds and potentially unlimited losses that mount in

3   mere seconds. In just one instance over a matter of minutes, Schwab's misconduct left Plaintiff

4   owning over $1.1 million in unwanted Royal Caribbean stock on margin and in the midst of a

5   global pandemic. Schwab is aware its trading platform is defective and fails to execute trades

6   as instructed by clients, but yet Schwab continues to utilize the defective system to process

7   client instructions. Schwab's practices are also contrary to legislatively declared and public

8   policies that seek to foster trust and transparency in the securities marketplace such as the best

9   execution rule and stockbroker's fiduciary duty and obligation to follow client instructions that

10  applies in every client-stockbroker relationship. Despite being required to exercise these

11  fiduciary duties with the utmost good faith and integrity (*Twomey v. Mitchum, Jones &*

12  *Templeton, Inc.*, 262 Cal. App. 2d 690, 709 (1968); Judicial Council of California, Civil Jury

13  Instructions 4100), Schwab agrees to execute trades as instructed yet uses a trading platform it

14  knows is defective and will not process trades as instructed. When the malfunction manifests

15  Schwab does not undo the incorrect trades, but instead refuses to compensate its clients and

16  actually removes the margin buying power which is fundamental to short sellers. Schwab's

17  conduct is unfair because "[t]he fiduciary duty owed by a stockbroker to a customer includes

18  an obligation to follow the customer's order instructions." 12 Am. Jur. 2d Brokers § 184. As a

19  stockbroker Schwab is "bound to exercise reasonable skill and diligence in the transaction of

20  the business entrusted to [it]." 12 Am. Jur. 2d Brokers § 185. Schwab's continued use of the

21  defective trading platform to fulfill client instructions is not an exercise of reasonable skill or

22  diligence and is unfair. Further, stockbrokers, including Schwab "should execute an order for

23  the sale of stock as promptly as possible" and "upon receiving a customer's order to purchase

24  stock for an account, [a broker has a duty] to do so as promptly as is possible." 12 Am. Jur. 2d

25  Brokers § 188. Schwab's efforts to limit, or exculpate, itself from liability for violating

26  California law and FINRA rules, violate public policy and Civ. Code § 1668. The gravity of

27  Schwab's wrongful conduct outweighs any alleged benefits attributable to such conduct. There

28

1   were reasonably available alternatives to further Schwab's legitimate business interests other

2   than engaging in the above-described wrongful conduct.

3       68.     Plaintiff is a "person" within the meaning of Business & Professions Code

4   section 17204, has suffered injury, and lost money or property, and therefore has standing to

5   bring this cause of action for injunctive relief, restitution, disgorgement, and other appropriate

6   equitable relief.

7       69.     Pursuant to Business & Professions Code sections 17203 and 17205, Plaintiff

8   seeks an injunction prohibiting Schwab from continuing such practices, restitution and all

9   other relief this Court deems appropriate.

10                          **COUNT II**

11   **Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing**

12      70.     Plaintiff incorporates by reference and realleges each and every allegation

13   contained above, as though fully set forth herein.

14      71.     Defendant entered into the Brokerage Agreement with Plaintiff and the Class

15   members to set up a brokerage account with Schwab and to gain access to its online trading

16   platform. In the Brokerage Agreements, Schwab promised to purchase and to sell securities for

17   Plaintiff's and the Class members' brokerage accounts according to their instructions.

18      72.     Additionally, every contract contains an implied duty of good faith and fair

19   dealing. Schwab entered into and is bound by the Brokerage Agreements with Plaintiff and

20   Class members: valid and enforceable contracts that contain an implied duty of good faith and

21   fair dealing.

22      73.     Based on the terms of the Brokerage Agreement, the stockbroker-client

23   fiduciary relationship, and the trust and confidence Plaintiff and Class members had in Schwab

24   that it would competently and in good faith execute trade orders involving substantial sums of

25   money, as alleged herein, Plaintiff and the Class members are entitled to have Schwab execute

26   their purchase and sell orders consistent with their instructions, including buying shares to

27   close existing, open short positions, instead of buying the shares as a long position and leaving

28   the short positions that should have been closed, open.

BLOOD HURST & O' REARDON, LLP

74.    Schwab had the exclusive power and ability to set the terms for its performance as Plaintiff and the Class members' broker under the Brokerage Agreements, including the power and ability to accurately execute orders to buy and close its clients' short positions.

75.    In breach of the Brokerage Agreement and the implied duty of good faith and fair dealing, Schwab failed to execute Plaintiff's and Class members' orders as they instructed. Schwab's online trading platform executed Plaintiff's and Class members' orders inconsistent with their instructions when, instead of buying shares of stock to close an open short position, Schwab purchased the shares of stock for an additional long position, while leaving the short positions that should have been closed, open. By failing to carry out the orders placed by Plaintiff and the Class members, Schwab abused its power under the Brokerage Agreements, usurped the benefits of these agreements and failed to confer on Plaintiff and the Class members the benefits of their bargain, causing them economic injury.

76.    Plaintiff and the other Class members have complied with all applicable provisions of the Brokerage Agreement, including paying Schwab all commissions and fees due and owing for the provision of its brokerage services.

77.    As a direct and proximate result of Schwab's breach of the Brokerage Agreements and its duty of good faith and fair dealing, as alleged herein, Plaintiff and the Class members suffered damages by owning securities they did not authorize Schwab to purchase for them, having to hold and later sell securities they instructed Schwab to sell in the first place, and being forced to pay charges on margin loans and borrowing costs they would not have incurred had Schwab executed their orders in conformity with their instructions.

78.    Consequently, Plaintiff, individually and on behalf of other Class members, seeks a declaration that Schwab breached the Brokerage Agreements by failing to execute trades as instructed, an award of damages subject to proof at trial, and any other relief as may be just and proper.

///

///

///

BLOOD HURST & O' REARDON, LLP

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

A.       Certifying the Class as requested herein;

B.       Awarding Plaintiff and the proposed Class members damages;

C.       Awarding restitution to Plaintiff and the proposed Class members;

D.       Awarding damages for breach of contract;

E.       Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Schwab from continuing the unlawful practices as set forth herein, and directing Schwab to identify, with court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Schwab by means of any act or practice declared by this Court to be wrongful;

F.       Awarding attorneys' fees and costs; and

G.       Providing such further relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: December 11, 2020

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
ALEKSANDR J. YARMOLINETS (276707)


By:        *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
ayarmolinets@bholaw.com

ROBBINS LLP
KEVIN A. SEELY (199982)
TREVOR S. LOCKO (323313)
5040 Shoreham Place
San Diego, CA  92122
Tel: 619/525-3990

BLOOD HURST & O' REARDON, LLP

619/525-3991 (fax)
kseely@robbinsllp.com
tlocko@robbinsllp.com

*Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

FIRST AMENDED CLASS ACTION COMPLAINT

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

Executed on December 11, 2020.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
tblood@bholaw.com
