1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   NORTHERN DISTRICT OF CALIFORNIA
10                        San Francisco Division

| | |
|---|---|
| 11  ROBERT WRIGHT, on behalf of himself and all others similarly situated, | Case No. 20-cv-05281-LB |
| 12                            Plaintiff, | |
| 13           v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| 14  CHARLES SCHWAB & CO., INC., | Re: ECF No. 39 |
| 15                            Defendant. | |
| 16 | |

17                          **INTRODUCTION**

18     This is a putative class action challenging an alleged bug in Charles Schwab's online trading

19 platform for stock transactions. The named plaintiff tried to close a short position in Royal

20 Caribbean stock, but Schwab's automated system purchased the shares without closing the short

21 position. As a result, the plaintiff lost $10,000. The plaintiff's relationship with Schwab was

22 governed by Schwab's brokerage agreement. The plaintiff, individually and on behalf of the

23 putative class, sued Schwab for (1) violations of the unlawful and unfair prongs of California's

24 Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, and (2) breach of contract and

25 the implied covenant of good faith and fair dealing.

26     Schwab moved to dismiss the breach-of-contract claim, primarily contending that it is not

27 liable under the brokerage agreement for system bugs and technical errors, and the plaintiff

28

United States District Court
Northern District of California

1   breached the agreement by not notifying Schwab of the glitch. It also moved to dismiss the UCL

2   claim, in part because there are no unlawful acts or unfair practices.

3       The court denies the motion to dismiss the contract claim. The contract exempts Schwab from

4   liability for alleged technical errors like the platform glitch here only for events outside its direct

5   control. Fact issues about Schwab's control and the plaintiff's reaction to the glitch preclude

6   dismissal of the claim at the pleadings stage. The court dismisses as superfluous the claim for a

7   breach of the implied covenant of good faith and fair dealing, dismisses the UCL unlawful claim

8   because the contract defines the parties' remedies, and dismisses the UCL unfair claim because the

9   plaintiff has not plausibly alleged an unfair practice.

10

11                                    **STATEMENT**

12      Schwab is a registered broker-dealer with the U.S. Securities and Exchange Commission and

13   offers investment services, including online brokerage accounts that allow retail customers to buy

14   and sell stocks. It is a member of the Financial Industry Regulatory Authority, Inc. (FINRA).[1] The

15   plaintiff is a retail customer who uses Schwab's online trading platform.[2]

16      The plaintiff sued Schwab because he lost money when he tried unsuccessfully to close a short

17   position on Schwab's online platform. An investor shorts a stock by borrowing stock shares and

18   selling them, betting that the stock price will fall and that the investor will be able to buy the stock

19   later at a lower price (and retire the borrowed obligation at a profit). An example: an investor

20   borrows 100 shares of stock, sells them for $15 per share (expecting that the share price will fall),

21   the price falls to $10 per share, and the investor buys 100 shares at $10 per share and closes the

22   short position at a profit. Schwab makes money from transactions, including interest on money

23   borrowed on margin and on the price of the borrowed stock.[3]

24

25

26   [1] Am. Compl. – ECF No. 36 at 2 (¶ 1), 5 (¶ 13). Citations refer to material in the Electronic Case File
     (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

27   [2] *Id.* at 3–4 (¶ 7).

28   [3] *Id.* at 6–8 (¶¶ 20–25, 27).

1   The plaintiff alleges that Schwab's online platform for buying and selling stocks malfunctioned.

2   On April 20, 2020, he tried to close a short position on 6,300 shares of Royal Caribbean stock.

3   Schwab bought the replacement 6,300 shares to close the short position, but it did not close the

4   short position. The plaintiff tried several times (by clicking the "close" link) to close the short

5   position, but each click resulted only in duplicate orders for the purchase of the replacement 6,300

6   shares and did not close the short position. In total, the plaintiff clicked the close link five times

7   over a 10-minute period, resulting in the purchase of 31,500 shares, purchased long on margin (on

8   loaned funds totaling $1.1 million and carrying interest charges).[4]

9   "Upon realizing that Schwab's system placed him into a $1.1 million long position in Royal

10  Caribbean, Plaintiff informed Schwab that Schwab's system had malfunctioned and that trades were

11  executed inconsistent with his instructions. Schwab did not correct its errors and left . . . [the] short

12  and long positions open, thereby failing to timely execute a securities trade as instructed." "Given the

13  risk of significant financial loss from a $1.1 million margin loan," the plaintiff "attempted to mitigate

14  the damages . . . [from] the system malfunction" and sold the shares after hours at a loss that

15  exceeded $10,000. In addition, Schwab removed the plaintiff's margin buying power for 90 days.[5]

16  The system malfunctioned again on April 22, 2020, when the plaintiff tried unsuccessfully to

17  close a new short position in Royal Caribbean stock, again by clicking the close link. The plaintiff

18  "immediately" contacted Schwab. Schwab's representative said that the system was "getting

19  confused and changing the type" of transaction, which meant that a transaction bought

20  replacement shares but did not close the short position. The representative said that "Schwab was

21  aware of the problem and had been working for several months to correct it." A week later, a

22  "Resolution Manager" from Schwab's Client Advocacy Team told the plaintiff that "due its

23  ongoing system malfunction, Schwab failed to execute Plaintiff's trades as Plaintiff instructed."

24  "Schwab has not fully compensated Plaintiff for his losses."[6]

25

26

----

27  [4] *Id*. at 2 (¶ 2), 9 (¶¶ 33–35).

27  [5] *Id*. at 10 (¶¶ 36–39). At this point, the plaintiff had hedged his risk. Mot. – ECF No. 39 at 10 n. 3.

28  [6] Am. Compl. – ECF No. 36 at 10–11 (¶¶ 41–44).

United States District Court
Northern District of California

The main issue in Schwab's motion is whether the parties' brokerage agreement precludes the lawsuit. When the plaintiff opened his account, he — like all customers — had to accept Schwab's brokerage agreement (called the Schwab One Account Agreement) in order to use Schwab's online trading platform.[7] The agreement has several provisions relevant to the parties' dispute.

First, after a customer completes an application, Schwab opens an account and acts as the customer's broker to purchase and sell securities for the account "and on [the customer's] instructions."[8]

Second, the agreement defines Schwab's liability for its failure to complete transactions:

> If we do not complete a transaction to or from your Account on time or in the correct amount according to our agreement with you, we may be liable for your losses or damages. However, in no event shall Schwab be liable for any special, indirect or consequential damages, even if we have been informed of the possibility of such damages.

> There are some exceptions. (There may be other exceptions not specifically mentioned here.) We will not be liable, for instance, if:

> . . .

> • Circumstances beyond our control (such as fire or flood) prevent the transfer, despite reasonable precautions that we have taken.

> . . .

> • An error in posting an amount or transaction occurs that is beyond our control.[9]

Another section called "Limitations of Liability" also provides that Schwab has no liability for events outside of its direct control.

> Schwab, the Information Providers, Information Transmitters, Third-Party Research Providers and any other person involved in transmitting Information will not be liable for any loss that results from a cause over which that entity does not have direct control. Such causes include, but are not limited to: (1) the failure of electronic or mechanical equipment or communication lines: (2) telephone or other interconnect problems; [and] (3) bugs, errors, configuration problems or the incompatibility of computer hardware or software. . . ."[10]

---

[7] *Id.* at 2 (¶ 2); July 2019 Account Agreement, Ex. A to Am. Compl. – ECF No. 36-1 at 32 (§ 1); July 2020 Account Agreement, Ex. B to *id.* – ECF No. 36-2 at 32 (§ 1). The court considers documents attached to the operative complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The order cites to the July 2019 agreement because it is the operative agreement for the plaintiff. The 2019 and 2020 agreements in any event have the same relevant provisions.

[8] July 2019 Account Agreement, Ex. A to Am. Compl. – ECF No. 36-1 at 32 (§ 1)

[9] *Id.* at 19–20 (§ 11).

[10] *Id.* at 73–74 (§ 5).

United States District Court
Northern District of California

United States District Court
Northern District of California

Third, the agreement has two separate (and virtually identical) paragraphs about procedures for order changes or cancellation requests.

> You acknowledge that it may not be possible to cancel a market or limit order once you have placed it, and you agree to exercise caution before placing all orders. Any attempt you make to cancel an order is simply a "request to cancel." Schwab processes your request to change or cancel an order on a best-efforts basis only and will not be liable to you if Schwab is unable to change or cancel your order. . . . No change or cancellation of market orders will be accepted through the Electronic Services. . . . If you wish to try to change or cancel your market order, you agree to call a Schwab representative to assist you. Attempting to replace or change a market order through the Electronic Services can result in the execution of duplicate orders, which ultimately are your responsibility. If an order cannot be canceled or changed, you agree that you are bound by the results of the original order you placed.[11]

Another section has this provision requiring customers to notify Schwab of transaction errors:

> You also agree to notify us immediately if you:
>
> . . .
>
> • Fail to receive a message that an order you initiated through the services has been received or executed.
>
> • Fail to receive an accurate written confirmation of an order or its execution.
>
> • Receive confirmation of an order that you did not place.[12]

Fourth, the agreement has a section titled "Risks of Electronic Trading," which states in part:

> When you use the Electronic Services to place a trade order, you acknowledge that your order may not be reviewed by a registered representative before being routed to an exchange for execution and you also will not have the opportunity to ask questions or otherwise interact with a Schwab representative. By placing a trade order through the Electronic Services, you voluntarily agree to assume any added risk that may result from the lack of human review of [the] order in exchange for the reduced commission and potentially greater convenience of electronic trading.[13]

The plaintiff sued Schwab initially in state court for negligence, unjust enrichment, and violations of the UCL's unlawful and unfair prongs.[14] Schwab removed the case under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and moved to dismiss the complaint.[15] The court

---

[11] *Id.* at 54 (§ 39), 75 (§ 9).

[12] *Id.* at 48 (§ 31).

[13] *Id*. at 70–71 (§ 2).

[14] Compl. – ECF No. 1-1 at 2–19.

[15] Mot. – ECF No. 17.

dismissed the complaint primarily on the ground that that the economic-loss rule barred the complaint because Schwab had no duty independent of the contract that allowed a tort claim.[16] The plaintiff amended the complaint, alleging a UCL claim under the unlawful and unfair prongs, predicating the unlawful charge on Schwab's breach of contract and the unfair charge on Schwab's breach of a fiduciary duty to follow its customer's instructions and failure to accurately execute the trades. He also claimed breach of contract and the implied covenant of good faith and fair dealing.[17] Schwab moved to dismiss both claims.[18] The court held a hearing on March 11, 2021. All parties consented to magistrate jurisdiction.[19]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are

---

[16] Order – ECF No. 35 at 5–9.

[17] Am. Compl. – ECF No. 36 at 14–18 (¶¶ 59–78).

[18] Mot. – ECF No. 39.

[19] Consents – ECF Nos. 14, 16.

1  merely consistent with a defendant's liability, it stops short of the line between possibility and

2  plausibility of 'entitlement to relief.'" *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

3      If a court dismisses a complaint, it should give leave to amend unless the "pleading could not

4  possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*,

5  848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

6

7  **ANALYSIS**

8      Schwab moved to dismiss the contract and UCL claims, primarily on the grounds that (1) it is

9  not liable under the brokerage agreement for system bugs and technical errors, the plaintiff

10  breached the agreement by not notifying Schwab, and there is no standalone claim for breach of

11  the implied covenant of good faith and fair dealing, and (2) there is no unlawful act or unfair

12  practice.[20] The court denies the motion to dismiss the contract claim and grants the motion to

13  dismiss the implied-covenant and UCL claims.

14

15  **1.  Claim for Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing**

16      To state a claim for breach of contract, a plaintiff must show the following: (1) a contract

17  existed; (2) the plaintiff performed his duties or was excused from performing his duties under the

18  contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result

19  of that breach. *First Com. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

20      The issues are whether the plaintiff plausibly pleaded Schwab's breach and his own

21  performance under the agreement. The plaintiff plausibly pleaded both.

22      First, under the agreement, Schwab is not liable "for events outside of its "direct control[,] . . .

23  includ[ing] but [] not limited to: . . . (3) bugs, errors, configuration problems or the incompatibility

24  of computer hardware or software."[21] The plaintiff complains of a malfunction in Schwab's

25

26

27  [20] Mot. – ECF No. 39.

28  [21] July 2019 Account Agreement, Ex. A to Am. Compl. – ECF No. 36-1 at 73 (§ 5).

1    automated online trading system, a problem that required Schwab's "developers and programmers

2    [to] work[] on this 'big project' to figure out the cause and remedy it."[22]

3       Preliminarily, the weight of authority supports the conclusion that the disclaimer is valid. In

4    *Lewis v. YouTube, Inc.*, for example, the plaintiff challenged YouTube's suspension of her account

5    as a breach of contract. 244 Cal. App. 4th 118, 120 (2015). The terms of service exempted YouTube

6    from liability for its "errors or omissions in any content," and the Court of Appeal thus sustained the

7    trial court's demurrer without leave to amend. *Id.* at 125. Similarly, in *In re Facebook PPC*

8    *Advertising Litigation*, advertisers sued Facebook for breach of contract on the ground that

9    Facebook was charging them improperly for billable "clicks" on their ads (when in fact there were

10    no consumer clicks and the clicks were allegedly "click fraud"). No. 5:09-cv-03043-JF, 2010 WL

11    3341062, at *4 (N.D. Cal. Aug. 25, 2010). Because the "disclaimers [] state unambiguously that

12    Defendant will not be liable for 'click fraud,'" the court dismissed the complaint for failure to state

13    a claim. *Id.* at *8. Similarly, in another putative class action, the court held that the plaintiff could

14    not sue an airline for breach of contract for flight delays because in the conditions of carriage, the

15    airline "specifically disclaims any liability for failure to comply with its schedule." *Hanni v. Am.*

16    *Airlines, Inc.*, No. C 08-00732 CW, 2008 WL 2740345, at *4 (N.D. Cal. July 11, 2008).

17       The disclaimer here bars Schwab's liability for technical errors that are outside its direct

18    control. The plaintiff does not contest that he is bound by the disclaimer and instead contends that

19    the provision does not apply because Schwab had control over the technical errors.[23] This involves

20    a fact issue that the court cannot address at the pleadings stage. It is Schwab's trading platform,

21    after all, and the plaintiff plausibly pleaded Schwab's knowledge of an ongoing problem and its

22    inability to remedy it.

23       Second, Schwab contends that the losses here happened because the plaintiff kept reentering

24    duplicative orders and did not — as required by the brokerage agreement — "call a Schwab

---

[22] Am. Compl. – ECF No. 36 at 4 (¶ 9), 8 (¶ 30).

[23] Opp'n – ECF No.42 at 12–13.

United States District Court
Northern District of California

representative to assist" him.[24] Moreover, it asserts, the online platform enabled trading without Schwab agents, but it came with identified risks: no review by agents and the potential that changing orders online — in violation of the requirement to call an agent for assistance — could result in duplicate orders.[25]

The plaintiff's actions here happened over a short 10 minutes, and he alleged that he notified Schwab. That notice distinguishes this case from cases where the contract requires an aggrieved party to give notice of an error, and the party does not. In *Hilario v. Allstate Insurance Company*, for example, an insurance company miscalculated the square footage of the insured's home, thereby raising her premiums. No. 20-cv-05459-WHO, 2020 WL 7643233, at *1 (N.D. Cal. Dec. 23, 2020). The contract required her to notify the insurance company of errors, and she did not. The court thus dismissed the breach-of-contract claim. *Id.* at *3–4.[26] By contrast, here the plaintiff alleged that he gave Schwab notice of the malfunction. The sufficiency of how he responded to the glitch and notified Schwab is a fact issue that precludes the court's holding as a matter of law that he failed to notify Schwab adequately.

In sum, the plaintiff plausibly states a claim for breach of contract.

Third, the plaintiff alleges a breach of the implied covenant of good faith and fair dealing, but under California law, the covenant does not alter the contract's substantive terms. The claim is superfluous.

The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (Cal. 2000). To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions

---

[24] July 2019 Account Agreement, Ex. A to Compl. – ECF No. 36-1 at 74 (§ 9).

[25] *Id.* at 54 (§ 39), 70–71 (§ 2), 74 (§ 9).

[26] Mot. – ECF No. 39 at 15 (collecting similar cases).

required for the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007); Judicial Council of Cal. Civil Jury Instructions § 325 (2020).

The plaintiff did not plausibly plead a claim for breach of the implied covenant.

First, the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 349–50. "To the extent the implied covenant claim seeks simply to invoke terms to which the parties *did* agree, it is superfluous." *Id*. at 352. Here, the plaintiff alleges that Schwab breached the implied covenant because it "failed to execute Plaintiff's and Class members' order as they instructed."[27] The brokerage agreement defines Schwab's liability, and the implied-covenant claim thus is superfluous.

Second, the plaintiff contends that the "best execution" rule prevents Schwab from disclaiming liability for the technical malfunctions on its platform.[28] The best-execution rule requires a FINRA member to use reasonable diligence to "ascertain the best market" for the security, meaning, it has to route an order to sell or buy stock to a marketplace so that the order can be matched with a corresponding order to ensure that the price to the consumer is "as favorable as possible under prevailing market conditions." FINRA Rule 5310(a)(1); *Newton v. Merrill Lynch, Inc.*, 135 F.3d 266, 270 (3d Cir. 1998)*.* "Among the factors that will be considered in determining whether the [FINRA] member has used 'reasonable diligence' are:

(A) the character of the market for the security (e.g., price, volatility, relative liquidity, and pressure on available communications);

(B) the size and type of transaction;

(C) the number of markets checked;

(D) accessibility of the quotation; and

(E) the terms and conditions of the order which result in the transaction, as communicated to the member and persons associated with the member.

---

[27] Am. Compl. – ECF No. 36 at 18 (¶ 75).

[28] Opp'n – ECF No. 42 at 17–18.

FINRA Rule 5310(a)(1). The plaintiff contends that the glitch on the platform violates the FINRA Rule.[29] It does not. The rule is about whether the FINRA member has used reasonable diligence to ascertain the best market to close the transaction. The rule does not apply here.

## 2.   UCL

Schwab moved to dismiss the UCL claim on several grounds: (1) the UCL does not apply to securities transactions; (2) a breach-of-contract clam cannot be a predicate for a UCL unlawful claim; and (3) the plaintiff did not plausibly plead an unfair practice.[30] The court dismisses the UCL claim.

### 2.1   Securities Transactions

Schwab contends that no case applies the UCL to any transaction involving the sale of a security, and that the rule thus is that the UCL does not apply to securities transactions.[31] The cases that the parties cite involve securities fraud (and not merely securities transactions).

For example, in *Bowen v. Ziasun Technologies, Inc.*, the plaintiffs contended that foreign brokerage companies defrauded them (through a Ponzi scheme) when they bought stock. 116 Cal. App. 4th 777, 779 (2004). The issue — whether the UCL applied to a case involving the sale of a security — was a question of first impression. *Id.* at 786. The UCL is known as California's "little FTC Act" and mirrors its federal counterpart, the Federal Trade Commission Act (FTC Act). *Id.* Historically the FTC has not viewed the FTC as reaching securities cases. *Id.* (quoting a Connecticut case: "The FTC has never undertaken to adjudicate deceptive conduct in the sale and purchase of securities.") (citation omitted). *Id.* The court cited federal cases holding that § 17200 does not apply to securities cases. *Id.* at 787 (collecting cases). The collected cases all involve securities fraud. *See, e.g., Dietrich v. Bauer*, 76 F. Supp. 2d 312, 351 (S.D.N.Y 1991). The court "conclude[d] that section 17200 did not apply to securities transactions." *Id.* at 788.

---

[29] *Id.* at 18.

[30] Mot. – ECF No. 39 at 18–22.

[31] *Id.* at 18; Reply – ECF No. 43 at 14.

United States District Court
Northern District of California

1      Courts addressing the issue after *Bowen* conclude that the UCL does not apply to securities

2 transactions involving deceptive conduct. *See, e.g.*, *Overstock.com, Inc. v. Gradient Analytics,*

3 *Inc.*, 151 Cal. App. 4th 688, 715 (2007); *Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860,

4 861, 866 (N.D. Cal. May 23, 2011). The issue is whether the cases establish that the bar applies to

5 any securities transaction generally. Courts have held that the bar does not apply to claims

6 tangentially related to securities transactions. *Betz*, 829 F. Supp. 2d at 866. The question is

7 whether the transaction here is tangentially related to a securities transaction.

8      In *Charles Schwab Corporations Securities Litigation*, investors challenged Schwab's alleged

9 violation of federal securities laws and related state laws by misrepresenting the risk profile and

10 assets of a fund and by changing the fund's investment policies. 257 F.R.D. 534, 542 (N.D. Cal.

11 2009). Those issues were predicates to the securities transactions. The court applied *Bowen* and

12 held that *Bowen* and the cases that followed all dealt with fraud in the sale of securities. *Id.* at 553.

13 The court did not dismiss the UCL claim — not predicated on fraud in the sale of securities or

14 otherwise predicated on violations of the 1933 Securities Act or 1934 Securities and Exchange Act

15 — based on *Bowen*. *Id.* at 553; *accord Strigliabotti v. Franklin Res., Inc.*, No. C 04-00883 SI,

16 2005 WL 645529, at *9 (N.D. Cal. Mar. 7, 2005) (undertaking a similar analysis and holding tht

17 section 17200 may be used to challenge an "alleged scheme to overcharge investors in the

18 management of securities").

19      Here, the glitches on the platform are seemingly predicates to the securities transactions, are more

20 like the additional costs at issue in *Strigliabotti*, and are tangentially related to the securities

21 transactions. The briefing on the issue is slight: a page each by the parties. On this briefing, the court

22 does not dismiss the UCL claim on this ground.

23     **2.2**   **Breach-of-Contract Claim as Predicate for UCL Unlawful Claim**

24      The breach-of-contract claim is not a predicate for the UCL unlawful claim.

25

26

27

28

United States District Court
Northern District of California

1    The parties' contract defines their remedies for their breaches. As the plaintiff concedes, there

2    must be something more for a UCL violation.[32] *Shroyer v. New Cingular Wireless Servs., Inc.*, 622

3    F.3d 1035, 1044 (9th Cir. 2010) ("a common law violation such as a breach of contract is

4    insufficient . . . under the unlawful prong of § 17200"); *Meyer v. Aabaco Small Bus., LLC*, No. 17-

5    cv-02102-EJD, 2018 WL 306688, at *4 (N.D. Cal. Jan. 5, 2018) (following *Shroyer* and

6    dismissing UCL "unlawful" claim predicated on common-law breach-of-contract claim).

7    A breach-of-contract claim is different from common-law tort claims that more arguably are

8    predicates for a UCL claim. *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099,

9    1107 (9th Cir. 2007) (tortious "intentional interference with [plaintiff's] employment contracts"),

10   *See Izsak v. Wells Fargo Bank, N.A.*, No. C 13-05362 SI, 2014 WL 1478711, at *6 (N.D. Cal. Apr.

11   14, 2014) (tort claims — including common-law promissory estoppel and misrepresentation

12   claims — "may serve as the predicate unlawful conduct for plaintiff's UCL claim"). This is

13   because the parties' contract — here, the brokerage agreement — defines their respective

14   obligations. There is no standalone UCL unfair claim predicated only on a breach of the parties'

15   contract. *Shroyer*, 622 F.3d at 1044.

### 2.3   Unfair Claim

17   The court dismisses the UCL unfair claim because the plaintiff has not plausibly pleaded an

18   unfair practice. The claim is predicated on the allegations that the court previously held did not

19   plausibly state a UCL unfair claim: Schwab did not use due care to maintain an error-free

20   platform. This is a claim of negligence. The economic-loss doctrine precludes it as a stand-alone

21   claim. For the reasons stated in the court's earlier order, the plaintiff does not plausibly plead an

22   unfair claim under any of the UCL unfair tests.[33]

---

[32] Opp'n – ECF No. 42 at 21 (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 2252 (9th Cir. 2008) (breach-of-contract claim can be a predicate for a UCL claim "provided it also constitutes conduct that is unlawful, or unfair, or fraudulent").

[33] Order – ECF No. 35 at 8–9.

United States District Court
Northern District of California

1

**CONCLUSION**

2    The court denies the motion to dismiss the breach-of-contract claim and grants the motion to

3    dismiss the claim for breach of the implied covenant of good faith and fair dealing and the UCL

4    claim.

5    This disposes of ECF No. 39.

6    **IT IS SO ORDERED.**

7    Dated: March 18, 2021

8    _____

9    LAUREL BEELER
     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28